

ALAN HIMMELFARB - SBN 90480
KAMBEREDELSON, LLC
2757 Leonis Boulevard
Vernon, California 90058
Telephone: (323) 585-8696

STEVEN W. TEPPLER
MICHAEL J. ASCHENBRENER
KAMBEREDELSON, LLC
350 N. LaSalle St.
Suite 1300
Chicago, IL 60654
Telephone: (312) 589-6370
Fax: (312) 589-6378

ATTORNEYS FOR PLAINTIFFS

**E-filing**

**PJH**

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

EROS, LLC, a Florida Limited Liability
Company, and SHANNON GREI, d/b/a
Nomine, an individual, on behalf of
themselves and all others similarly situated,

        Plaintiffs,

v.

LINDEN RESEARCH, INC., a Delaware
Corporation, and LINDEN RESEARCH
INTERNATIONAL, INC., a Delaware Corp.,

        Defendants.

**CV 09 4269**

Case.

**COMPLAINT FOR:**

(1) **Copyright Act of 1976, 17
U.S.C. §§ 101, 105, 115 and
502;**
(2) **Lanham Act, 15 U.S.C.
§§ 1114, 1125;**
(3) **Cal. Bus. and Prof. Code
§ 17200;**
(4) **Cal. Bus. and Prof. Code
§ 17500; and,**
(5) **Tortious Interference with
Economic Relations.**

DEMAND FOR JURY TRIAL

COMPLAINT

1    Plaintiffs, by their attorneys, upon personal knowledge as to themselves and their own

2   acts and upon information and belief as to all other matters, allege as follows:

3                              **NATURE OF THE ACTION**

4    1.    Plaintiffs Eros, LLC ("Eros") and Shannon Grei, d/b/a Nomine ("Grei")

5   (collectively, "Plaintiffs"), bring this class action complaint against Defendants Linden

6   Research, Inc. and Linden Research International, Inc. (collectively, "Linden Lab" or

7   "Defendant"), headquartered in San Francisco, California, for its practice of violating the

8   real-world intellectual property rights of proprietors of virtual content within the Second Life

9   virtual world ("Second Life"), which Linden Lab owns and operates.

10    2.    Second Life is an adults-only online 3D virtual world that allows its users to

11   do exactly what the name implies: live a second life separate and distinct from the users'

12   real-world lives.  Within Second Life, users (known as "Residents") can obtain employment,

13   purchase land, commit crimes, build homes and careers, make friends, fall in love, have sex,

14   visit museums, and most important, make and spend money.

15    3.    Some proprietors within Second Life, including Plaintiffs, sell (virtual) items

16   protected by real-world copyrights and trademarks.

17    4.    Plaintiffs allege that Linden Lab has directly and secondarily violated the

18   intellectual property rights of Plaintiffs and other Second Life proprietors.  Linden Lab

19   directly and secondarily infringes the trademark of Plaintiff Eros by using Eros's mark to sell

20   infringing virtual goods within Second Life and by providing the tools to other infringing

21   Second Life users.  Linden Lab directly and secondarily violates the copyrights of Plaintiff

22   Grei by reproducing and displaying her copyrighted works within Second Life, and by

23   materially contributing to and supervising the infringing conduct of others within Second

24   Life.

25

26

27

28

COMPLAINT

2

5.      Linden Lab, with knowing and conscious intent to do so, profits in multiple ways and at multiple stages of all of this illegal conduct. In fact, Linden Lab derives a substantial portion of its revenues from the illegal conduct alleged in this complaint.

6.      Linden Lab has the technical means to simply and easily halt the alleged conduct, but refuses to do so because it makes too much money from all the infringement. Plaintiffs bring this lawsuit in order to prevent Linden Lab from continuing to commit trademark and copyright infringement and to recover damages for Linden Lab's unlawful behavior.

**PARTIES**

7.      Plaintiff Eros, LLC is a seller of various goods within Second Life, including the popular SexGen® line of erotic items. Eros, LLC is a Florida limited liability company headquartered in Lutz, Florida. The CEO of Eros is Kevin Alderman, known in Second Life as "Stroker Serpentine."

8.      Plaintiff Shannon Grei is a citizen and resident of the state of Oregon. Ms. Grei is a proprietor of copyrighted works for use within Second Life.

9.      Defendant Linden Research, Inc. does business as Linden Lab and operates Second Life®. It is a Delaware corporation headquartered in San Francisco County, California at 945 Battery Street, San Francisco, California 94111. Linden Research, Inc. does business throughout the State of California and the nation.

10.      Defendant Linden Research International, Inc. is a member of the Linden Lab family of companies. It is a Delaware corporation headquartered in San Francisco County, California at 945 Battery Street, San Francisco, California 94111. Linden Research International, Inc. does business throughout the State of California and the nation.

**JURISDICTION AND VENUE**

11.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

COMPLAINT

3

12. Personal jurisdiction and Venue are proper because Linden Lab is a corporation headquartered in San Francisco County and/or because the improper conduct alleged in this Complaint occurred in, was directed from, and/or emanated or exported from California.

## INTRADISTRICT ASSIGNMENT

13. Pursuant to Civil Local Rule 3-2(c), as an Intellectual Property Action, this case shall be assigned on a district-wide basis.

## FACTS RELATING TO SECOND LIFE

14. Second Life is an internet-based, hosted interactive computer simulation that allows its participants to see, hear, use and modify the simulated objects in the computer-generated environment. Second Life users adopt a Second Life name and a character or "avatar" to represent themselves virtually within Second Life.

15. Among the many real-world-like features of Second Life is its economy. Within Second Life, Residents buy and sell goods, just like people and businesses in the real world.

16. Companies large and small have set up stores and presences within Second Life and do business within Second Life, including Adidas, American Apparel, Coca-Cola, Intel, Reebok, Warner Brothers, and the NBA.

17. For example, Adidas sold its a3 Microride running shoe in the Adidas Store in Second Life and in the real-world. And just like a person in the real world might purchase these shoes to wear around town, Second Life Residents could purchase them to wear them within Second Life. The materials for shoes in-world and in the real world may be different—software code for shoes in Second Life and leather and rubber for shoes in the real world—but the purpose and use is effectively the same.

18. Plaintiffs are also among the merchants in Second Life.

1    19.    Second Life has its own currency and currency exchanges to support all this

2  commerce.

3    20.    The Second Life currency, Linden Dollars, is represented by the symbol "L$."

4    21.    Linden Dollars can be exchanged for real-world money accepted outside

5  Second Life, including U.S. Dollars.  This means that real money changes hands in Second

6  Life, and real commerce occurs.

7    22.    Defendant Linden Lab operates the official exchange, LindeX, which allows

8  users to exchange Linden Dollars for U.S. Dollars—for a fee of 3.5% per transaction.

9    23.    The ability to exchange Linden Dollars for U.S. Dollars—combined with

10  Linden Lab's encouragement and development tools—has allowed true commercial activities

11  to flourish within Second Life, with user-to-user transactions surpassing $120 million (U.S.)

12  in the First Quarter of 2009 alone.

13  (https://blogs.secondlife.com/community/features/blog/2009/04/16/the-second-life-economy-

14  -first-quarter-2009-in-detail).

15    24.    Included in Second Life's "in-world" commercial activities are the sale and

16  licensing of products and services protected by intellectual property rights, including

17  trademarks, service marks, and copyrights.

18    25.    Linden Lab has long promoted the ability to sell virtual goods and services in

19  Second Life, including trademarked and copyrighted materials.

20  **Second Life: the Technical Details**

21    26.    The Second Life Grid is the technical backbone of Second Life, comprising

22  the hardware on which the simulated world resides and all of the software and programs that

23  allow the world to exist.

24    27.    Linden Lab owns and operates the Second Life Grid, hosting it on a series of

25  servers for the world itself and the items that exist inside Second Life.  These items, which

26  include items that merchants, like Plaintiffs, sell in-world, are referred to as "assets."  Each

27

28
COMPLAINT

5

1  asset can be identified by a universally unique identifier, or UUID. This means that each

2  item Plaintiffs and others create for sale in-world— including those protected by real-world

3  trademarks and copyrights—can be identified by UUIDs.

4  **Second Life: How Piracy Works In-World**

5      28.    The Second Life Grid utilizes what is effectively a Digital Rights

6  Management ("DRM") scheme, but the nature of the system allows third-party programs to

7  bypass the DRM. For example, one such program, CopyBot, now allows users to copy

8  unique assets—even those protected by real-world trademarks and copyrights. Although

9  such use is prohibited under the Second Life Terms of Service ("TOS") and may be

10  prosecuted under the Digital Millenium Copyright Act ("DMCA"), Linden Lab conducts

11  little supervision or enforcement to insure that such content copying is eliminated,

12  minimized, or detected. Moreover, whatever DRM-type protection Linden Lab offers against

13  such piracy-enabling programs is easily circumvented and hopelessly ineffective.

14      29.    Although Linden Lab may ban a Resident who is observed using CopyBot,

15  BuilderBot, CryoLife, or any number of other similar circumvention clients, it will not ban a

16  user for simply uploading or even selling copied content. In this case, Linden Lab's

17  enforcement of intellectual property law is limited to that required by the "safe harbor"

18  provisions of the Digital Millennium Copyright Act, which requires filing a real-world

19  lawsuit. Although a few high-profile businesses in Second Life have filed such lawsuits, the

20  majority of businesses in Second Life do not make enough money to afford prosecuting the

21  matter on an individual basis. Thus, Linden Lab effectively allows piracy to run rampant in

22  Second Life and does not afford its Resident businesses any effective protection against it.

23      30.    The DMCA does not adequately protect Second Life users primarily because

24  infringers can so easily circumvent it. A Second Life pirate who becomes subject to a

25  DMCA takedown notice will usually not challenge it, but rather will simply create a new free

26  account and re-upload the content, employing the tried and true whack-a-mole approach.

27

28

COMPLAINT

6

31.     In some circumstances, using the DMCA for protection within Second Life is not only ineffective, but actually counter-productive. Often times, Second Life infringers will counter-file against the DMCA, which results in the restoration of the pirated content and the release of personal information to both the rights-holder and the infringer. Because many content creators in Second Life choose to remain anonymous, this aspect of the DMCA has an intimidating and chilling effect on those content creators who do not wish to jeopardize their privacy and anonymity. Additionally, some Second Life infringers threaten rights-holding merchants with the release of their protected assets for free if they file DMCA claims against the infringers. Second Life infringers are all too familiar with these aspects of the DMCA and use the DMCA as a shield to continue infringing and profiting with minimal or no consequence.

32.     In addition, the technical process of removal and re-instatement of content on Second Life is subject to failure that can result in content becoming unusable to the IP owner and its customers.

33.     Also, Linden Lab has shown that it is not vigilant in enforcing DMCA takedown notices, as Plaintiff Grei has experienced.

34.     Accordingly, Linden Lab has made trademark and copyright infringement free and easy, turning the Second Life community into a vast virtual flea market in which users peddle knockoffs and pirated copies of IP-protected products and services. Despite Linden Lab's actual knowledge of such widespread activity, it has taken no substantive action to prevent, limit, or prohibit such widespread infringement.

35.     For example, Residents attempting to purchase Eros's SexGen virtual beds in Second Life will be presented with a selection of infringing knockoffs of trademarked virtual goods and services, as well as the genuine article sold by Plaintiff Eros. The same is also true for Plaintiff Grei's copyrighted saleable works.

COMPLAINT

36.     Linden Lab also knowingly and willingly profits from these infringing activities in numerous ways. First, pirates must rent (for real-world currency) virtual world "locations" from Linden Lab in order to sell the infringing and trademarked or copyrighted items or works. Second, pirates must then "upload" their infringing work, products or services into the Second Life virtual world, for which Defendants impose a fee. Third, all in-world transactions on Second Life are made through the exchange of Linden Dollars. Linden Dollars may be exchanged for real-world currency at in-world currency exchanges. Not surprisingly, Linden Lab also operates the most widely used currency exchange platform in the Second Life community, LindeX, for use at which it imposes an exchange fee of 3.5%. Fourth, Linden Lab operates the website XStreetSL.com, which is an online marketplace for goods and services to be used in Second Life. Fifth, Linden Lab also operates an in-world classified ads system. Pirated works are available both on XStreetSL.com and the in-world classifieds system.

37.     In other words, Linden Lab has created in Second Life a system in which it directly engages in piracy, actively allows its users to engage in piracy by providing the tools for it, and by which it profits from its own piracy and the piracy of its users. As a result, Linden Lab is violating established intellectual property law and the fact that the forum for the infringement is a new one—an online virtual world—does nothing to shield it from liability.

**Second Life Terms of Service**

38.     At all times relevant to this Complaint, the Second Life Terms of Service (http://secondlife.com/corporate/tos.php) recognize and allow Second Life users to retain all intellectual property rights in the digital content that they create, place, or otherwise own within Second Life.

39.     As of August 31, 2009, the Second Life Terms of Service state in relevant part:

**1.3     Content available in the Service may be provided by users of the Service, rather than by Linden Lab.  Linden Lab and other parties have rights in their respective content, which you agree to respect.**

.   .   .

You acknowledge that Linden Lab and other content providers have rights in their respective Content under copyright and other applicable laws and treaty provisions, and that except as described in this Agreement, such rights are not licensed or otherwise transferred by mere use of the Service. . . .

.   .   .

**3.2     You retain copyright and other intellectual property rights with respect to Content you create in Second Life, to the extent that you have such rights under applicable law. . . .**

Users of the Service can create Content on Linden Lab's servers in various forms.  Linden Lab acknowledges and agrees that, subject to the terms and conditions of this Agreement, you will retain any and all applicable copyright and other intellectual property rights with respect to any Content you create using the Service, to the extent you have such rights under applicable law.

.   .   .

40.     Plaintiffs did not grant Linden Lab any license, authorization, permission or consent to use the pirated goods, services or works.  Instead, in violation of Plaintiffs' rights under copyright and trademark law, Linden Lab has by the acts alleged herein willfully, intentionally, and purposefully infringed the copyrighted works and trademarked goods and services, and/or knowingly facilitated, enabled, induced, and materially contributed to infringing uses thereof, and/or refused to exercise its ability to control or supervise infringing uses thereof.

41.     Linden Lab directly derives substantial financial benefits from this scheme, including by earning revenue from licensing the virtual real estate used to offer and sell, imposing of a fee for the upload of infringing works, goods or services by infringers, and charging promotional and advertising fees.  Linden Lab also retains a portion of the proceeds of nearly every sale associated with the infringed trademarks and copyrights by infringers, and from the overall increase in user traffic and commercial value of its business and

COMPLAINT

1  property arising from the "draw" of infringing copyrighted and trademarked intellectual

2  property of others.

3       42.    Further, Linden Lab has continued to willfully infringe Plaintiffs' rights even

4  after Plaintiffs notified them that its use of Plaintiffs' trademarked goods and services and

5  copyrighted materials violates Plaintiffs' rights under copyright and trademark law.

6       43.    Defendant Linden Lab knows, or should know, and/or with reasonable

7  diligence could ascertain, a substantial amount of content in Second Life is protected by

8  trademark and copyright laws.

9       44.    Plaintiffs did not grant the pirates and their customers any license,

10  authorization, permission, or consent to use the pirated goods, services or works. Instead, and

11  in violation of Plaintiffs' rights under copyright law and trademark law, Linden Lab has

12  willfully, intentionally and with disregard to Plaintiffs' intellectual property rights infringed

13  and secondarily infringed the same.

14       45.    Not only has Linden Lab engaged in violations of the Lanham Act and

15  Copyright Act by directly, vicariously, and contributorily infringing Plaintiffs' copyrights

16  and trademarks, and by inducing others to infringe the same, Linden Lab has also knowingly

17  and intentionally engaged in and continues to engage in unfair, deceptive, and misleading

18  business practices under California law.

19       46.    By its actions alleged herein, Linden Lab has engaged in tortious interference

20  with economic relations under California law.

21                **FACTS RELATING TO PLAINTIFF EROS**

22       47.    Eros, LLC is a proprietor of, among other items, adult-themed merchandise

23  within Second Life®. Eros's CEO is Kevin Alderman, aka Stroker Serpentine.

24       48.    Mr. Alderman is among Second Life's most famous and successful merchants,

25  having been profiled in *Wired*, *Business Week*, *CBS News*, and *Fox Business Channel*.

26

27

28

COMPLAINT

49.     Among the virtual products Eros markets and sells within Second Life is its SexGen® line of adult-themed animation sequences.  SexGen products, of which there are nearly forty (40) distinct virtual products, are not only the most popular among their competitors within Second Life, but are also among the most popular virtual products of any kind within Second Life.  Eros counts over 100,000 active Second Life users as customers.

50.     As a result of Eros's substantial sales and its CEO's notoriety, the SexGen mark has become famous and distinctive among the relevant consumers, serving to distinguish Eros's goods among its competitors and to identify Eros as the source of the goods.

51.     Eros owns the SexGen® mark, which is registered on the principal trademark register as United States trademark registration number 3483253.  Eros filed for the mark on June 11, 2007 and it became a registered service mark on August 12, 2008.

52.     The SexGen mark is categorized as one "[p]roviding temporary use of non-downloadable software for animating three-dimensional virtual characters," according the U.S. Patent and Trademark Office.  It was first used as of January 1, 2005.

## FACTS RELATING TO TRADEMARK INFRINGEMENT

53.     Plaintiff Eros's virtual erotic SexGen products sold for use in Second Life have been counterfeited, cloned, and ripped off countless times by a multitude of Second Life Residents.  The manner in which this has occurred is akin to the knockoff handbags and purses sold near Canal Street in New York City.  Some of the bags are stolen, but actual brand-name handbags sold at deep discounts, while many others are knockoffs that merely use the brand-name makers' designs and trademarks.  The same is true of the knockoff SexGen products sold within Second Life.  In either case, Linden Lab and merchants in Second Life are infringing Eros's registered trademark.

54.     These two methods do damage to Eros in different ways.  Those merchants who actually clone Eros's products and resell them are selling Eros's goods without

COMPLAINT

11

1  compensating Eros, falsely designating the origin of the goods, and causing confusion among
2  consumers in the process. These companies are making money only because of the goodwill
3  that Eros had already generated for the SexGen brand. On the other hand, those merchants
4  who sell cheap, imitation knock-offs bearing the SexGen mark harm Eros by causing further
5  confusion among consumers when the products they purchased do not function in the ways
6  they expect SexGen products to function. This harms the SexGen mark and Eros.

7      55.    Second Life Resident Eva Capalini made unauthorized use of Eros's SexGen
8  mark by creating counterfeit SexGen products and selling them to other Residents. Making
9  matters worse, Eva Capalini created the counterfeit SexGen products in such a way that other
10 Second Life IP pirates, such as LindAn Figgis and Good Hax, could copy her counterfeits
11 and sell them. This allowed Eva Capalini's counterfeit products to sell with great volume
12 and cause great harm to Plaintiff Eros.

13     56.    Second Life Residents Rase Kenzo (Thomas Simon of New York) and
14 Volkov Catteno (Robert Leatherwood of Azle, Texas) also made unauthorized use of Eros's
15 SexGen mark by cloning, or creating exact replicas, of SexGen's products for sale within
16 Second Life.

17     57.    Eva Capalini's infringing activities are particularly notable. On June 17,
18 2008, Linden Lab disabled access by Second Life Residents to the SexGen-infringing assets
19 created by Eva Capalini. Promptly thereafter, though, Linden Lab restored access to the
20 disabled content because of public outcry within Second Life. Because the infringing content
21 bore the SexGen mark, Residents blamed Eros for the broken content. As a result, Eros was
22 forced to launch an extensive marketing campaign to rectify public perception (created by an
23 infringer and Linden Lab) that Eros's SexGen products are unreliable. Eros even offered
24 genuine replacement products to unsuspecting purchasers of infringing content in order to
25 salvage its reputation.

26
27
28

COMPLAINT

12

58. These are just a few of the examples of those who infringed the SexGen mark within Second Life.

59. The use by Eva Capalini, Rase Kenzo, Volkov Catteno, LindAn Figgis, and Good Hax of the SexGen mark was in connection with goods and services.

60. The use by Eva Capalini, Rase Kenzo, Volkov Catteno, LindAn Figgis, and Good Hax of the SexGen mark occurred on the internet, which is inherently in interstate commerce. Second Life can be and is used around the world, including all states in the U.S.

61. The use by Eva Capalini, Rase Kenzo, Volkov Catteno, LindAn Figgis, and Good Hax of the SexGen mark created a likelihood of consumer confusion as to whether these Residents' virtual products were the real SexGen products made by Eros or knockoffs and whether Eros would support these Residents' imitation products.

62. Linden Lab had actual or constructive knowledge that these Residents were using the Second Life platform to infringe Eros's SexGen mark.

63. Linden Lab directly controls and monitors the technology and systems that comprise the Second Life platform, which is what these Residents used to infringe the SexGen mark. Everything necessary to infringe Eros's mark is stored on Linden Lab's servers, including: the in-world locations where these Residents infringed on the SexGen mark; the LindeX currency exchanges where these Residents and other infringers exchange Linden Dollars for real-world currency. Additionally, Linden Lab rents or sells the virtual land and sites, and the actual facilities necessary for infringers to pirate Eros's mark. Linden Lab also charges upload fees and promotional fees to infringers uploading pirated content they intend to sell in-world. Finally, Linden Lab directly profits from the LindeX currency exchanges that infringers like these Residents use to exchange ill-gotten in-world gains for real-world currency.

1        64.    Linden Lab, on an ongoing basis, knowingly and voluntarily continues to

2    engage in infringing activities in order to generate revenue and commercial gain, despite

3    knowledge that its activities are in direct violation of applicable federal law.

4        65.    Linden Lab has financially benefitted from the damage those like the

5    infringers named above have inflicted on Eros's SexGen mark.

6        66.    Linden Lab operates a marketplace both in-world and at XStreetSL.com.

7    Second Life Residents can search for and purchase thousands of virtual items for use in

8    Second Life in these marketplaces.

9        67.    Plaintiff Eros's trademark-protected SexGen virtual products are available in

10   these marketplaces, along with infringing products sold by competitors.

11       68.    Linden Lab places "Featured Items" at the top of product search results.

12   Searching for "SexGen" will generate both legitimate and infringing "Featured Items"

13   listings.

14       69.    The infringing goods reside in servers wholly controlled by Linden Lab.

15                  **FACTS RELATING TO PLAINTIFF GREI**

16       70.    Shannon Grei, d/b/a Nomine and known in-world as Munchflower Zaius, is a

17   proprietor of so-called "skins," clothing and other coverings for Residents to wear within

18   Second Life.

19       71.    Ms. Grei is also among Second Life's more recognizable and successful

20   merchants, having been featured by *Reuters*, *Newsweek*, and the *CBS Evening News*.

21       72.    Since 2004, Ms. Grei has sold hundreds of thousands of her Nomine products

22   within Second Life.

23       73.    As a result of Ms. Grei's substantial sales, notoriety, and promotional efforts,

24   the Nomine brand has become famous and distinctive among the relevant consumers, serving

25   to distinguish Ms. Grei's goods among its competitors and to identify Ms. Grei as the source

26   of the goods.

27

28

COMPLAINT

74.     Ms. Grei owns the copyright to "Nominee Araignee Set," which she registered with the United States Copyright Office on September 24, 2007 and bears the registration number VAu000958340.  The Copyright Office lists its date of creation as 2005 and categories it as "Visual Material."

## FACTS RELATING TO COPYRIGHT INFRINGEMENT

75.     Plaintiff Grei's copyrighted skins and clothing sold for use in Second Life have been counterfeited, cloned, and ripped off countless times by a multitude of Second Life Residents who then sell the copyrighted skins as their own in blatant violation of her rights under copyright law.

76.     Second Life Resident Rase Kenzo (Thomas Simon of New York) made unauthorized use of Grei's copyrighted works—in particular, the virtual clothes she sells—by copying these virtual clothes and selling them within Second Life.

77.     Second Life Resident Peta Voom also made unauthorized use of Grei's copyrighted works—in this case, nearly every item in her store—by directly copying her designs and selling them within Second Life.

78.     These are just a few of the examples of those who infringed the Nomine mark within Second Life.

79.     Linden Lab had actual or constructive knowledge that these Residents were using the Second Life platform to infringe Grei's Nomine copyright.

80.     Linden Lab both materially contributes to the infringement and has the right and ability to supervise the infringing conduct because it directly controls and monitors the technology and systems that comprise the Second Life platform, which is what these Residents used to infringe the Grei's copyrighted works.  Everything necessary to infringe Grei's works is stored on Linden Lab's servers, including: the in-world locations where these Residents infringed on Grei's works; the LindeX currency exchanges where these Residents and other infringers exchange Linden Dollars for real-world currency.  Additionally, Linden

COMPLAINT

15

1    Lab rents or sells the virtual land and sites, and the actual facilities necessary for infringers to

2    pirate Grei's works. Linden Lab also charges upload fees to infringers uploading pirated

3    content they intend to sell in-world. Finally, Linden Lab directly profits from the LindeX

4    currency exchanges that infringers like these Residents use to exchange ill-gotten in-world

5    gains for real-world currency.

6         81.    Linden Lab, on an ongoing basis, knowingly and voluntarily continues to

7    engage infringing activities in order to generate revenue and commercial gain, despite

8    knowledge that its activities are in direct violation of applicable federal law.

9         82.    Linden Lab has financially benefitted from the damage those like the

10   infringers named above have inflicted on Grei's copyrighted works.

11        83.    Linden Lab operates a marketplace both in-world through its fee-based

12   classifieds and at XStreetSL.com. Second Life Residents can search for and purchase

13   thousands of virtual items for use in Second Life in these marketplaces.

14        84.    Plaintiff Grei's copyright-protected virtual products are available in these

15   marketplaces, along with infringing products sold by competitors.

16        85.    Linden Lab directly infringes Grei's copyrighted works by displaying the

17   infringing works throughout Second Life.

18        86.    Linden Lab also directly infringes Grei's copyrighted works by reproducing

19   the infringing works on its own servers and computers.

20        87.    The infringing works exist in servers wholly controlled by Linden Lab.

21                               **CLASS ALLEGATIONS**

22        88.    Plaintiff Eros brings this action pursuant to Fed. R. Civ. P. 23(b)(2) and

23   23(b)(3) on behalf of itself and two classes, the Trademark Owner Class and the Trademark

24   Infringement Class. Plaintiff Grei brings this action pursuant to Fed. R. Civ. P. 23(b)(2) and

25   23(b)(3) on behalf of herself and two classes, the Copyright Owner Class and the Copyright

26   Infringement Class:

27

28

COMPLAINT

a) **The Trademark Owner Class.** All individuals and entities in the United States who own, have owned, or otherwise have the right to enforce licensing rights to goods and services bearing trademarks or service marks registered with the United States Patent and Trademark Office, and who engage or have engaged in commercial transactions in Second Life associated with such registered trademark or service marks.

b) **The Trademark Infringement Class.** All individuals and entities in the United States who (1) own, have owned, or otherwise have the right to enforce licensing rights to goods and services bearing trademarks or service marks registered with the United States Patent and Trademark Office, (2) engage or have engaged in commercial transactions in Second Life associated with such registered trademark or service marks, and (3) whose trademarks and/or service marks were infringed in Second Life.

c) **The Copyright Owner Class.** All individuals and entities in the United States who own, have owned, or otherwise have the right to enforce licensing rights in connection with a copyright registered with the U.S. Register of Copyrights and who engage or have engaged in commercial transactions in Second Life associated with such copyrighted works.

d) **The Copyright Infringement Class.** All individuals and entities in the United States who (1) own, have owned, or otherwise have the right to enforce licensing rights in connection with a copyright registered with the U.S. Register of Copyrights (2) engage or have engaged in commercial transactions in Second Life associated with such copyrighted works, and (3) whose copyrights were infringed in Second Life.

1    Excluded from each Class are Defendants, their legal representatives, assigns, and

2    successors, and any entity in which Defendants have a controlling interest. Also excluded is

3    the judge to whom this case is assigned and the judge's immediate family.

4         89.    The Classes consist of thousands of individuals and other entities, making

5    joinder impractical.

6         90.    The claims of Plaintiffs Eros and Grei are typical of the claims of all of the

7    other members of their respective Classes.

8         91.    Plaintiffs will fairly and adequately represent and protect the interests of the

9    other members of the Classes and Subclass. Plaintiffs have retained counsel with substantial

10   experience in prosecuting complex litigation and class actions. Plaintiffs and their counsel

11   are committed to vigorously prosecuting this action on behalf of the members of the Classes

12   and Subclass, and have the financial resources to do so. Neither Plaintiffs nor their counsel

13   have any interest adverse to those of the other members of the Classes.

14        92.    Absent a class action, most members of the Classes and Subclass would find

15   the cost of litigating their claims to be prohibitive and will have no effective remedy. The

16   class treatment of common questions of law and fact is also superior to multiple individual

17   actions or piecemeal litigation in that it conserves the resources of the courts and the litigants,

18   and promotes consistency and efficiency of adjudication.

19        93.    Linden Lab has acted and failed to act on grounds generally applicable to

20   Plaintiffs and the other members of the Classes, requiring the Court's imposition of uniform

21   relief to ensure compatible standards of conduct toward the members of the Classes.

22        94.    The factual and legal bases of Linden Lab's liability to Plaintiffs and to the

23   other members of the Classes are the same, resulting in injury to Plaintiffs and all of the other

24   members of the Classes. Plaintiffs and the other members of the Classes have all suffered

25   harm and damages as a result of Linden Lab's wrongful conduct.

26

27

28

COMPLAINT

18

95.     There are many questions of law and fact common to the claims of Plaintiffs and the other members of the Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Classes include but are not limited to the following:

        (a)     whether Linden Lab's conduct described herein constitutes direct and/or secondary trademark infringement under the Lanham Act and trademark law;

        (b)     whether Linden Lab's conduct described herein constitutes direct and/or secondary copyright infringement under the Copyright Act;

        (c)     whether Linden Lab's practices constitute unfair and deceptive acts or practices; and,

        (d)     whether Linden Lab's conduct constitutes tortious interference with economic relations under California law.

96.     The questions of law and fact common to the members of the class predominate over any questions affecting only individual members and a class action is superior to all other available methods for the fair and efficient adjudication of this controversy.

97.     Plaintiffs reserve the right to revise these definitions based on facts learned in discovery.

### FIRST CAUSE OF ACTION

### Trademark Infringement, 15 U.S.C. § 1114(1)

### (on behalf of Plaintiff Eros and Trademark Infringement Class)

98.     Plaintiffs incorporate by reference the foregoing allegations.

99.     Trademark infringement under § 1114(1) of the Lanham Act occurs when a defendant, without the consent of the registrant, uses in commerce any reproduction,

COMPLAINT

19

1  counterfeit, copy, or colorable imitation of a registered mark that is likely to cause confusion,
2  mistake, or deception.

3    100.  In order to sustain a claim of trademark infringement under § 1114(1), Eros
4  must show that it has a valid, protectable mark, and that Linden Lab's use of the mark is
5  likely to cause confusion.

6    101.  Eros's mark, SexGen, is a registered trademark.

7    102.  Linden Lab uses in commerce Plaintiff Eros's SexGen mark to sell infringing,
8  counterfeit products in its in-world marketplace and XStreetSL.com online marketplace by
9  way of its "Featured Items" placed by Linden Lab at the top of search results for "SexGen."

10    103.  By using Eros's SexGen mark to sell both legitimate and infringing,
11  counterfeit SexGen products, Linden Lab's use of the mark is likely to cause confusion.

12    104.  Linden Lab's acts of infringement of the SexGen mark have been willful,
13  intentional, and purposeful, in disregard of and indifferent to the rights of Plaintiff Eros.

14    105.  Linden Lab benefits from the infringement by way of increased revenue
15  derived from additional product uploads, virtual land rentals, and additional currency
16  exchanges.

17    106.  Linden Lab's trademark infringement has caused injury to Eros in the form of
18  lost sales and revenue, lost business reputation, consumer confusion. Linden Lab's
19  trademark infringement has also caused Plaintiff Eros irreparable injury. Unless restrained
20  and enjoined, Linden Lab will continue to commit such acts. Plaintiff's remedy at law is not
21  adequate to compensate it for these inflicted and threatened injuries, entitling Plaintiff to
22  remedies including injunctive relief.

23                      **SECOND CAUSE OF ACTION**
24          **False Designation of Trademark Origin, 15 U.S.C. § 1125**
25        **(on behalf of Plaintiff Eros and Trademark Infringement Class)**
26    107.  Plaintiffs incorporate by reference the foregoing allegations.

27

28
COMPLAINT

108.   Trademark infringement under § 1125(a) (False Designation of Origin) occurs when a defendant (1) uses in commerce (2) any word, false designation of origin, false or misleading description, or representation of fact, which (3) is likely to cause confusion or misrepresents the characteristics of his or another person's goods or services.

109.   Linden Lab uses in commerce Plaintiff Eros's SexGen mark to sell infringing, counterfeit products in its in-world marketplace and XStreetSL.com online marketplace by way of its "Featured Items" placed by Linden Lab at the top of search results for "SexGen."

110.   By using Eros's SexGen mark to sell both legitimate and infringing, counterfeit SexGen products, Linden Lab is likely to cause confusion and misrepresents the characteristics, nature, and qualities of another Second Life proprietor's virtual goods.

111.   Linden Lab's acts of infringement of the SexGen mark have been willful, intentional, and purposeful, in disregard of and indifferent to the rights of Plaintiff Eros.

112.   Linden Lab benefits from the infringement by way of increased revenue derived from additional product uploads, virtual land rentals, and additional currency exchanges.

113.   Linden Lab's trademark infringement has caused injury to Eros in the form of lost sales and revenue, lost business reputation, consumer confusion.

114.   Linden Lab's trademark infringement has also caused Plaintiff Eros irreparable injury. Unless restrained and enjoined, Linden Lab will continue to commit such acts. Plaintiff's remedy at law is not adequate to compensate it for these inflicted and threatened injuries, entitling Plaintiff to remedies including injunctive relief.

### THIRD CAUSE OF ACTION

### Contributory Trademark Infringement, 15 U.S.C. § 1114

### (on behalf of Plaintiff Eros and Trademark Infringement Class)

115.   Plaintiffs incorporate by reference the foregoing allegations.

1    116.    Contributory trademark infringement occurs when a defendant either

2    intentionally induces a third party to infringe a person's mark, or supplies a service or

3    product to a third-party with actual or constructive knowledge that the service or product is

4    being used to infringe the person's mark.

5    117.    Defendant Linden Lab supplied an infringing service—the Second Life

6    platform—to infringing entities with actual or constructive knowledge that these entities

7    were and are violating Plaintiff Eros's trademark by mislabeling its imitation products as

8    genuine SexGen products.

9    118.    Linden Lab exercised direct control and monitoring of the Second Life

10   platform and XStreetSL.com website used by Second Life Residents to infringe on Eros's

11   SexGen registered trademark.

12   119.    The infringing products are sold within Linden Lab's Second Life platform

13   and at Linden Lab's XStreetSL.com website, and both of these systems are used to locate and

14   obtain the infringing material.

15   120.    Linden Lab had the power to remove infringing material from Second Life

16   and XStreetSL.com, but failed or refused to do so.

17   121.    Linden Lab benefits from the infringement by way of increased revenue

18   derived from additional product uploads, virtual land rentals, and additional currency

19   exchanges.

20   122.    Linden Lab's acts of infringement of the SexGen mark have been willful,

21   intentional, and purposeful, in disregard of and indifferent to the rights of Plaintiff Eros.

22   123.    Linden Lab's contributory trademark infringement has caused injury to Eros

23   in the form of lost sales and revenue, lost business reputation, consumer confusion.

24   124.    Linden Lab's contributory trademark infringement has also caused Plaintiff

25   Eros irreparable injury. Unless restrained and enjoined, Linden Lab will continue to commit

26

27

28

COMPLAINT

1  such acts. Plaintiff's remedy at law is not adequate to compensate it for these inflicted and

2  threatened injuries, entitling Plaintiff to remedies including injunctive relief.

3  **FOURTH CAUSE OF ACTION**

4  **Vicarious Trademark Infringement, 15 U.S.C. § 1114**

5  **(on behalf of Plaintiff Eros and Trademark Infringement Class)**

6      125.    Plaintiffs incorporate by reference the foregoing allegations.

7      126.    Vicarious trademark infringement occurs when a defendant controls, directs,

8  facilitates, encourages, promotes, allows, enables, or otherwise permits a third-party to

9  infringe a mark, and receives a benefit from doing so.

10      127.    Linden Lab exercises joint ownership or control over the infringing products

11  and services because it maintains the right, power, and ability to control, edit, alter, modify,

12  and maintain the software, hardware, and entire computer infrastructure and eco-system used

13  to effectuate third-party infringements.

14      128.    Linden Lab exercised direct control and monitoring of the Second Life

15  platform and XStreetSL.com website used by Second Life Residents to infringe on Eros's

16  SexGen registered trademark.

17      129.    The infringing products are sold within Linden Lab's Second Life platform

18  and at Linden Lab's XStreetSL.com website, and both of these systems are used to locate and

19  obtain the infringing material.

20      130.    Linden Lab had the power to remove infringing material from Second Life

21  and XStreetSL.com, but failed or refused to do so.

22      131.    Linden Lab benefits from the infringement by way of increased revenue

23  derived from additional product uploads, virtual land rentals, and additional currency

24  exchanges.

25      132.    Linden Lab's acts of infringement of the SexGen mark have been willful,

26  intentional, and purposeful, in disregard of and indifferent to the rights of Plaintiff Eros.

27

28

COMPLAINT

1    133.    Linden Lab's contributory trademark infringement has caused injury to Eros

2  in the form of lost sales and revenue, lost business reputation, consumer confusion.

3    134.    Linden Lab's contributory trademark infringement has also caused Plaintiff

4  Eros irreparable injury. Unless restrained and enjoined, Linden Lab will continue to commit

5  such acts. Plaintiff's remedy at law is not adequate to compensate it for these inflicted and

6  threatened injuries, entitling Plaintiff to remedies including injunctive relief.

7                                **FIFTH CAUSE OF ACTION**

8          **Direct Copyright Infringement—Public Display, 17 U.S.C. § 501**

9          **(on behalf of Plaintiff Grei and Copyright Infringement Class)**

10    135.    Plaintiffs incorporate by reference the foregoing allegations.

11    136.    Linden Lab, without the permission or consent of Plaintiff Grei, and without

12  authority, is publicly displaying and purporting to authorize the public display of Ms. Grei's

13  registered copyrighted visual works. Linden Lab causes these works to be publicly displayed

14  by showing individual images of infringing virtual clothing and skins in response to searches

15  for her Nomine skins in Second Life and on XStreetSL.com. Linden Lab's conduct

16  constitutes direct infringement of Plaintiff Grei's exclusive rights under the Copyright Act to

17  publicly display her copyrighted visual works.

18    137.    Linden Lab's acts of infringement have been willful, intentional, and

19  purposeful, in disregard of and indifferent to the rights of Plaintiff Grei.

20    138.    As a direct and proximate result of Linden Lab's infringement of Plaintiff

21  Grei's copyrights and exclusive rights under copyright, Ms. Grei is entitled to the maximum

22  statutory damages pursuant to 17 U.S.C. § 504(c). Alternatively, at Plaintiff Grei's election,

23  pursuant to 17 U.S.C. § 504(b), she shall be entitled to her actual damages plus Linden Lab's

24  profits from infringement, as will be proven at trial.

25    139.    Plaintiff Grei is entitled to her costs, including reasonable attorneys' fees,

26  pursuant to 17 U.S.C. § 505.

27

28

COMPLAINT

1       140.   Linden Lab's conduct is causing and, unless enjoined by this Court, will

2 continue to cause Plaintiff Grei great and irreparable injury that cannot fully be compensated

3 or measured in money. Plaintiff has no adequate remedy at law. Pursuant to 17 U.S.C. § 502,

4 Plaintiff Grei is entitled to a permanent injunction requiring Defendants to employ reasonable

5 methodologies to prevent or limit infringement of Plaintiff Grei's copyrights.

6 **SIXTH CAUSE OF ACTION**

7 **Direct Copyright Infringement—Reproduction, 17 U.S.C. § 501**

8 **(on behalf of Plaintiff Grei and Copyright Infringement Class)**

9       141.   Plaintiffs incorporate by reference the foregoing allegations.

10       142.   Linden Lab, without authority, is making, causing to be made, and purporting

11 to authorize the making of unauthorized copies of Plaintiff Grei's registered copyrighted

12 visual works. Defendant Linden Lab's conduct constitutes direct infringement of Plaintiff

13 Grei's exclusive right under the Copyright Act to reproduce her copyrighted works.

14       143.   Linden Lab's acts of infringement have been willful, intentional, and

15 purposeful, in disregard of and indifferent to the rights of Plaintiff Grei.

16       144.   As a direct and proximate result of Linden Lab's infringement of Plaintiff

17 Grei's copyrights and exclusive rights under copyright, Ms. Grei is entitled to the maximum

18 statutory damages pursuant to 17 U.S.C. § 504(c). Alternatively, at Plaintiff Grei's election,

19 pursuant to 17 U.S.C. § 504(b), she shall be entitled to her actual damages plus Linden Lab's

20 profits from infringement, as will be proven at trial.

21       145.   Plaintiff Grei is entitled to her costs, including reasonable attorneys' fees,

22 pursuant to 17 U.S.C. § 505.

23       146.   Linden Lab's conduct is causing and, unless enjoined by this Court, will

24 continue to cause Plaintiff Grei great and irreparable injury that cannot fully be compensated

25 or measured in money. Plaintiff has no adequate remedy at law. Pursuant to 17 U.S.C. § 502,

26

27

28

COMPLAINT

1 | Plaintiff Grei is entitled to a permanent injunction requiring Defendants to employ reasonable

2 | methodologies to prevent or limit infringement of Plaintiff Grei's copyrights.

### SEVENTH CAUSE OF ACTION

### Contributory Copyright Infringement, 17 U.S.C. § 501

### (on behalf of Plaintiff Grei and Copyright Infringement Class)

6 | 147. Plaintiffs incorporate by reference the foregoing allegations.

7 | 148. Contributory copyright infringement occurs when a defendant has knowledge

8 | of another's infringement and either materially contributes to or induces that infringement.

9 | 149. Second Life users have infringed and are infringing Plaintiff Grei's rights in

10 | her registered copyrighted visual works by uploading and selling infringing copies of

11 | Plaintiff Grei's copyrighted works within Second Life and publicly displaying without

12 | authorization. Second Life users are therefore directly infringing Plaintiff Grei's exclusive

13 | rights of reproduction and public display under 17 U.S.C. §§ 106(1) and (5).

14 | 150. Linden Lab has knowledge that Second Life Residents have and are infringing

15 | Plaintiff Grei's copyrighted works within Second Life.

16 | 151. Linden Lab has and continues to materially contribute to the infringement by

17 | supplying the Second Life platform and tools to infringers, without which those individuals

18 | would not be able to infringe Plaintiff Grei's registered copyright.

19 | 152. Linden Lab's acts of infringement have been willful, intentional, and

20 | purposeful, in disregard of and indifferent to the rights of Plaintiff Grei.

21 | 153. As a direct and proximate result of Linden Lab's infringement of Plaintiff's

22 | copyrights and exclusive rights under copyright, Plaintiff Grei is entitled to the maximum

23 | statutory damages pursuant to 17 U.S.C. § 504(c). Alternatively, at Plaintiff's election,

24 | pursuant to 17 U.S.C. § 504(b), Plaintiff shall be entitled to her actual damages plus Linden

25 | Lab's profits from infringement, as will be proven at trial.

26

27

28

COMPLAINT

154. Plaintiff Grei is entitled to her costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505.

155. Linden Lab's conduct is causing and, unless enjoined by this Court, will continue to cause Plaintiff great and irreparable injury that cannot fully be compensated or measured in money. Plaintiff has no adequate remedy at law. Pursuant to 17 U.S.C. § 502, Plaintiff Grei is entitled to a permanent injunction requiring Linden Lab to employ reasonable methodologies to prevent or limit infringement of Plaintiff's copyrights.

## EIGHTH CAUSE OF ACTION

### Vicarious Copyright Infringement, 17 U.S.C. § 501

### (on behalf of Plaintiff Grei and Copyright Infringement Class)

156. Plaintiffs incorporate by reference the foregoing allegations.

157. Vicarious copyright infringement occurs when a defendant has the right and ability to supervise the infringing conduct, and has a direct financial interest in the infringing activities.

158. Second Life users have infringed and are infringing Plaintiff Grei's rights in her registered copyrighted visual works by uploading and selling infringing copies of Plaintiff Grei's copyrighted works within Second Life and publicly displaying without authorization. Second Life users are therefore directly infringing Plaintiff Grei's exclusive rights of reproduction and public display under 17 U.S.C. §§ 106(1) and (5).

159. Linden Lab possesses the right and ability to supervise all conduct that occurs within Second Life, including infringing conduct.

160. Linden Lab has a direct financial interest in the activities that have infringed Plaintiff Grei's copyrighted materials. Linden Lab benefits directly from the infringement by way of increased revenue derived from additional product uploads, virtual land rentals, and additional currency exchanges.

COMPLAINT

1      161.   Linden Lab's acts of infringement have been willful, intentional, and

2 purposeful, in disregard of and indifferent to the rights of Plaintiff Grei.

3      162.   As a direct and proximate result of Linden Lab's infringement of Plaintiff's

4 copyrights and exclusive rights under copyright, Plaintiff Grei is entitled to the maximum

5 statutory damages pursuant to 17 U.S.C. § 504(c). Alternatively, at Plaintiff's election,

6 pursuant to 17 U.S.C. § 504(b), Plaintiff shall be entitled to her actual damages plus Linden

7 Lab's profits from infringement, as will be proven at trial.

8      163.   Plaintiff Grei is entitled to her costs, including reasonable attorneys' fees,

9 pursuant to 17 U.S.C. § 505.

10      164.   Linden Lab's conduct is causing and, unless enjoined by this Court, will

11 continue to cause Plaintiff great and irreparable injury that cannot fully be compensated or

12 measured in money. Plaintiff has no adequate remedy at law. Pursuant to 17 U.S.C. § 502,

13 Plaintiff Grei is entitled to a permanent injunction requiring Linden Lab to employ

14 reasonable methodologies to prevent or limit infringement of Plaintiff's copyrights.

15 **NINTH CAUSE OF ACTION**

16 **Violation of Cal. Bus. Prof. Code § 17200**

17 **(on behalf of all Plaintiffs and all Classes)**

18      165.   Plaintiffs incorporate by reference the foregoing allegations.

19      166.   Section 17200 proscribes unfair business competition and defines this to

20 include any unfair, unlawful, or fraudulent business practice or act.

21      167.   Linden Lab violated, and continues to violate this proscription through its

22 conduct alleged above, including its unlawful violations of the Lanham Act and the

23 Copyright Act.

24      168.   Linden Lab, through its acts of unfair competition, has obtained money at the

25 expense of Plaintiffs. Plaintiffs ask that this Court restore this money to them and enjoin

26 Linden Lab from continuing its illegal practices.

27

28

COMPLAINT

1    169.   Such conduct is ongoing and continues to this date.  Plaintiffs are therefore

2  entitled to the relief described herein.

3                              **TENTH CAUSE OF ACTION**

4                        **Violation of Cal. Bus. Prof. Code § 17500**

5                        **(on behalf of all Plaintiffs and all Classes)**

6    170.   Plaintiffs incorporate by reference the foregoing allegations.

7    171.   Linden Lab violated, and continues to violate, this section by virtue of its

8  practices described herein, including false advertising of counterfeit SexGen virtual products.

9    172.   Linden Lab, through its acts of unfair competition, has obtained money at the

10  expense of Plaintiffs.  Plaintiffs ask that this Court restore this money to them and enjoin

11  Linden Lab from continuing its illegal practices.

12    173.   Such conduct is ongoing and continues to this date.  Plaintiffs are therefore

13  entitled to the relief described herein.

14                            **ELEVENTH CAUSE OF ACTION**

15                      **Intentional Interference with Economic Relations**

16                       **(on behalf of all Plaintiffs and all Classes)**

17    174.   Plaintiffs incorporate by reference the foregoing allegations.

18    175.   Defendants' acts alleged herein have deprived and continue to deprive

19  Plaintiffs of past and prospective economic and commercial opportunities to exploit their

20  intellectual property.

21    176.   A plaintiff seeking to recover for intentional interference with prospective

22  contractual or economic relations under California law must prove that a defendant

23  knowingly interfered with Plaintiff's expectancy, and engaged in conduct that was wrongful

24  by some legal measure other than the fact of the interference itself.

25    177.   Linden Lab, by its acts alleged herein, has knowingly, willfully and

26  intentionally engaged in primary and secondary copyright and trademark infringement, unfair

27

28

COMPLAINT

1   business practices, and thereby knowingly interfered with Plaintiffs' expectancy in a manner

2   by engaging in conduct that was wrongful by legal measure or measures other than the fact of

3   the interference itself.

4         178.   Linden Lab is thereby liable to Plaintiffs for damages arising from their

5   actions.

6         179.   By reason of Linden Lab's acts, Plaintiffs' remedy at law is not adequate to

7   compensate it for the injuries inflicted by Linden Lab.

## TWELFTH CAUSE OF ACTION

### Negligent Interference with Economic Relations

### (on behalf of all Plaintiffs and all Classes)

11         180.   Plaintiffs incorporate by reference the foregoing allegations.

12         181.   Linden Lab's acts alleged herein have deprived and continue to deprive

13   Plaintiffs of past and prospective economic and commercial opportunities to exploit their

14   intellectual property.

15         182.   A plaintiff seeking to recover from negligent interference with prospective

16   contractual or economic relations under California law must prove that a defendant knew, or

17   should have known, that its acts or omissions interfered with plaintiff's expectancy, thereby

18   engaging in conduct that it knew or should have known exhibited "disinterested

19   malevolence" and was wrongful by some legal measure other than the fact of the interference

20   itself.

21         183.   Linden Lab, by its acts alleged herein, has knowingly, willfully and

22   intentionally engaged in primary and secondary copyright and trademark infringement, unfair

23   business practices, and thereby knowingly interfered with Plaintiffs' expectancy in a manner

24   by engaging in conduct that was wrongful by legal measure or measures other than the fact of

25   the interference itself.

26         184.   Linden Lab is thereby liable to Plaintiffs for damages arising from its actions.

27

28

COMPLAINT

30

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs Eros, LLC and Ms. Grei, on behalf of themselves and the Classes, pray for the following relief:

A.      Certify this case as a class action on behalf of the Classes defined above; appoint Eros, LLC and Shannon Grei as class representatives; and appoint their counsel as class counsel;

B.      Declare that the actions of Linden Lab, as set out above, result in Trademark Infringement, False Designation of Origin Trademark Infringement, Contributory Trademark Infringement, Vicarious Trademark Infringement, Intentional Interference with Economic Relations, Negligent Interference with Economic Relations, and violate Cal. Bus. & Prof. Code §§ 17200 and 17500;

C.      Enter judgment against Linden Lab for all statutory damages authorized by the Lanham Act, or, at Plaintiff's choosing, Linden Lab's profits, the costs of the action, and actual damages caused by its conduct and, to the extent authorized under the Lanham Act, treble damages;

D.      Enter judgment against Linden Lab for all statutory damages authorized by the Copyright Act, or, at Plaintiff's choosing, actual damages caused by its conduct;

E.      Award restitution against Linden Lab for all money to which Plaintiffs and the Classes are entitled in equity;

F.      Award Plaintiffs and the Classes their reasonable litigation expenses and attorneys' fees, as authorized by the Lanham Act and the Copyright Act;

G.      Award Plaintiffs and the Classes pre- and post-judgment interest, to the extent allowable;

H.      Enter injunctive and/or declaratory relief as is necessary to protect the interests of Plaintiffs and the Classes; and

I.      Award such other and further relief as equity and justice may require.

COMPLAINT

31

**JURY TRIAL**

Plaintiffs demand a trial by jury for all issues so triable.

Respectfully submitted,

Dated: September 1*5*, 2009

KAMBEREDELSON, LLC

By: _____
ALAN HIMMELFARB
One of the Attorneys for Plaintiffs

ALAN HIMMELFARB - SBN 90480
KAMBEREDELSON, LLC
2757 Leonis Boulevard
Vernon, California 90058
Telephone: (323) 585-8696

STEVEN W. TEPPLER
MICHAEL J. ASCHENBRENER
KAMBEREDELSON, LLC
350 N. LaSalle St.
Suite 1300
Chicago, IL 60654
Telephone: (312) 589-6370
Fax: (312) 589-6378

COMPLAINT